FILED
AUG 0 5 2008

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| RANDY LEE DAHL, | \* | CIV. 06-4264 |
| Plaintiff, | \* | |
| vs. | \* | MEMORANDUM OPINION |
| | \* | AND ORDER |
| | \* | RE: SUMMARY JUDGMENT |
| DOUGLAS WEBER, JEFF BLOOMBERG, BOB DOOLEY, and J. DOE'S 1-10, in their individual capacities, | \* | |
| Defendants. | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff filed this 1983 action with state law claims for intentional and negligent infliction of emotional distress, seeking money damages for having been imprisoned in South Dakota Correctional Facilities for approximately 19 months beyond the maximum expiration date of his state sentence. Defendants Douglas Weber, Jeff Bloomberg, and Bob Dooley[1] have moved for summary judgment on the merits and based on absolute and qualified immunity.

## FACTUAL AND PROCEDURAL BACKGROUND

From November 21, 1995, through December 15, 2003, Plaintiff Randy Dahl was an inmate in the care and custody of the South Dakota Department of Corrections (DOC). At all times relevant to this action, Defendant Douglas Weber (Weber) was Warden of the South Dakota State Penitentiary in Sioux Falls. Defendant Jeff Bloomberg (Bloomberg) was Secretary of Corrections from January 1995, through December 2002. At all times relevant to this action, Defendant Bob Dooley (Dooley) was Warden of the Mike Durfee State Prison in Springfield., South Dakota.

On November 21, 1995, Dahl was convicted on two separate counts of sexual contact with a child under sixteen in violation of S.D.C.L. § 2-22-7, and one charge of furnishing a beverage to a minor, and was sentenced to two separate consecutive five-year sentences on the sexual contact convictions. Dahl's convictions for sexual contact were based on conduct that occurred in December

---

[1] Although the Complaint names J. Doe's 1-10 and states that "[w]hen the true names of those Defendants are ascertained, Plaintiff will seek leave to amend this Complaint to identify their true names," no motion to amend has been made. These claims will therefore be dismissed.

1993, and on June 17, 1995. At the time of his conviction Dahl was entitled to good-time reductions from his prison sentence pursuant to S.D.C.L. § 24-5-1.[2] Before Dahl was incarcerated, the 1995 South Dakota Legislature amended S.D.C.L. § 24-2-18[3] to provide that good-time credits could be revoked for the additional ground of an inmate convicted of a sex offense refusing to cooperate with rehabilitative treatment. This amendment went into effect on July 1, 1995, which was after Dahl's criminal conduct, but before his trial, conviction, and sentencing.

Susan Straight worked in Central Records for the DOC from 1976 through 2002. In 1995, Straight was Records Administrator for Cental Records. Her duties and responsibilities included entering inmate information into the DOC's computer database, keeping inmate records, calculating sentence and parole dates, and reviewing documents. At the time Dahl went through intake at the Penitentiary, Central Records did not track offense dates when entering inmate information into the DOC's computer database and the DOC's computer software did not allow for offense dates to be

---

[2]S.D.C.L. § 24-5-1 provides:
Every inmate sentenced for any term less than life, or who has had an indeterminate sentence set at a term of years, or who has had a life sentence commuted to a term of years, and subject to the provisions of §§ 24-2-17 and 24-2-18, is entitled to a deduction of four months from his or her sentence for each year and pro rata for any part of a year for the first year to the tenth, and six months for the tenth year and for each year thereafter until the expiration of the period of the sentence as pronounced by the court, for good conduct.

[3]S.D.C.L. § 24-2-18 provides:
The warden may, at any time prior to an inmate's final discharge, consider recommendations of the disciplinary committee pertaining to the withholding of statutory time granted for good conduct and may recommend to the secretary of corrections that the reduction of time for good conduct pursuant to § 24-5-1 be withheld in full or in part. The warden may also, at any time prior to the inmate's final discharge, recommend to the secretary of corrections that the reduction of time for good conduct pursuant to § 24-5-1 be withheld in full or in part for conduct evincing an intent to reoffend or commit further offenses when discharged or for any person convicted of a sex crime within the meaning of § 22-24B-1 who fails to fully cooperate with all treatment offered.

The secretary shall, after hearing, fix the amount of time earned by good conduct to be withheld, which decision is final.

entered in 1995. Also, offense dates were not recorded on DOC sentence-calculation worksheets. Special Assistant for Adult Corrections, Laurie Feiler, testified in her deposition that offense date information was recorded probably in late 1996 or early 1997. At some unknown date, Dahl's offense date was incorrectly entered as August 14, 1995, the date of Dahl's arrest. Dahl's earliest offense date was December, 1993, and his latest offense date was June of 1995.

The 1996 South Dakota Legislature changed its parole system and made the good-time provisions of S.D.C.L. § 24-5-1 and S.D.C.L. § 24-2-18 inapplicable to any person sentenced to prison for a crime committed after July 1, 1996. *See* S.D.C.L. § 24-15A-3. In May of 1996, Dahl was served written notice that, based on his criminal offense, he had been identified as needing sex offender treatment. Dahl was also advised that he must fully cooperate with all treatment offered and, if he failed to do so, that his good-time credits could be revoked. The notice states, "It has been determined that your current sentence is for a crime committed prior to July 1, 1996 ..." The written notice further stated that if Dahl believed he had been incorrectly identified as needing sex offender treatment he could appeal this determination through the DOC's appeal process. Dahl refused to participate in the DOC's sex offender treatment program ( STOP program). Dahl signed a form stating that he refused to participate in the STOP program and that he understood that the consequences of his refusal could include revocation of his good-time credits.

At the time of Dahl's refusal to participate in treatment, the DOC's policy provided that when an old-system inmate identified as needing sex offender treatment refused to participate in the DOC's STOP program, the warden would forward this information to the Secretary of Corrections and recommend that the inmate's good-time credits be revoked under SDCL § 24-2-18. Consistent with this policy, and based on Dahl's written refusal to participate in the STOP program, Dooley recommended to the Secretary of Corrections that Dahl's good-time credits be revoked. On August 1, 1996, Dahl appeared before Secretary Bloomberg to determine whether his good-time credits should be revoked. The date of Dahl's offenses never came up at the hearing. The Secretary's Findings of Fact state only: "Inmate Dahl has failed to fully cooperate with Sex Offender Treatment as evidenced by his failure to contact and become involved with the treatment available to him."

Dahl received written notice on December 2, 1996, that three years and six months of good time had been withheld by Bloomberg pursuant to S.D.C.L. § 24-2-18, and that his adjusted release

date was November 21, 2005. Had Dahl received the good-time credits which were revoked, Dahl's sentence would have expired on May 21, 2002.

The DOC's computer database and the written notice Dahl received of his sentence recalculation, dated December 2, 1996, revealed that DOC records incorrectly showed Dahl's offense date as August 14, 1995. Dahl testified at his deposition that this was incorrect, but that he did not notice this mistake until he looked at the document during his deposition taken in this lawsuit, which was on March 16, 2007. Dahl did not appeal the Secretary's decision revoking his good-time credits.

In *Hughes v. Bloomberg*, CIV. 96-1898 (S.D. 7th Jud. Cir. June 27, 1997), a prisoner won a declaratory judgment action in state court which held that the DOC's policy of taking away good-time credit of a prisoner who had been convicted before the passage of the 1995 amendments was in violation of the ex post facto laws. The State Court Judge reached this conclusion after analyzing the case under the South Dakota Supreme Court's decision in *Delano v. Petteys*, 520 N.W.2d 606 (SD 1994)(retroactive application of amendment reducing good-time credit for conduct evincing intent to reoffend violated ex post facto clause). The Respondent in *Hughes v. Bloomberg* did not appeal the decision to the South Dakota Supreme Court, and after the *Hughes* decision a number of inmates, but not Dahl, were given back good-time credit that had been taken pursuant to the 1995 legislative amendment. In fact, in *Meinders v. Weber*, 604 N.W.2d 248 (S.D. 2000), the South Dakota Supreme Court declined to adjudicate a Petitioner's claim that application of the amendments to the good-time statutes as applied to him were in violation of the ex post facto clause because it determined that the claim was not ripe for review. The South Dakota Supreme Court explained, however:

> Steve Lee, Deputy Warden of the South Dakota State Penitentiary, testified at the habeas hearing that the amended statutes have not been applied to [Petitioner] and he has lost no good time.[Petitioner] does not argue otherwise. In addition, there are no plans to apply the amended statutes to him. Apparently, the prison authorities are abiding by a Seventh Circuit judge's decision declaring that retroactive application of the 1995 amendments to SDCL 24-2-18 violates the prohibition against ex post facto laws.

*Meinders* at 263.

On March 21, 2002, Dahl told members of the South Dakota Board of Pardons and Paroles

that his good-time credit could not be taken because the dates of his offenses or sentence did not correspond with the law allowing for the loss of good-time credit. In March of 2002, following Dahl's parole hearing, a series of e-mails was exchanged between the Records Administrator for Cental Records, Sue Straight, and Special Assistant for Adult Corrections, Laurie Feiler, as well as two other DOC employees, regarding the revocation of Dahl's good-time credits. None of these employees are named defendants in this action. Straight e-mailed Feiler that Dahl had claimed that his good-time credits could not be taken for refusing to participate in sex offender treatment because his offense date or date of sentence did not "fit within the parameters of the law." Feiler looked at Dahl's information on the DOC's computer database, and responded that Dahl's offense date was listed as August 14, 1995. Feiler further responded, "If this is correct, he is subject to loss of good time for failure to participate in sex offender programs ... . If date of offense is between 7/1/1993 and 6/30/1996 inmate is subject to the provisions of this statute."

In 2002 the DOC audited all inmate files to ensure that sentence, parole eligibility, and release date calculations were correct. During the audit, Dahl's offense date was corrected to be December 1993. Although Feiler discovered that the originally-recorded offense dates for Dahl were incorrect, she testified that she did not at the time understand this as having any impact on Dahl's sentence, release dates, or whether or not good-time credits had properly been taken from Dahl.

The initial step of the prison's grievance process is an Informal Resolution Request (IRR). Dahl filed an IRR on November 21, 2002, requesting that his good-time credits be returned, and stating, "[Staff member] told me I did not need to take the STOP program." Velma Sudbeck, the Case Manager who responded to Dahl's grievance, stated in her response:

> Contacted Stop Program Counselor. You need to admit to take responsibility for your offense to be a part of the program, instead you continue to deny your offense.

> The STOP contract clearly states that you must be completely honest and take full responsibility for the offending behavior, at this time you are not, therefore you will not be allowed in the STOP program.

Neither Dahl's November 21, 2002, IRR nor the responding denial of the IRR mentioned Dahl's offense dates. Dahl did not appeal or pursue further administrative review. However, Dahl testified

that a prison official to whom he complained on a number of occasions advised him to get a lawyer.

On July 15, 2003, in *Dahl v. Weber*, CIV. 03-108, Dahl filed a pro se Petition for Writ of Habeas Corpus in Lake County, Third Judicial Circuit, South Dakota Circuit Court. Dahl's two-page pro se Petition raises only the ex post facto issue and states that he was being wrongfully detained due to good-time credit being withheld even though his offense date was prior to the enactment of S.D.C.L.§ 24-2-18. Judge Steele issued a provisional writ and appointed counsel on July 16, 2003. Weber admitted service of the pro se Petition on August 21, 2003. An amended petition was filed on August 26, 2003, raising the same ex post facto claim as was raised in the pro se petition. [4]Weber, represented by the South Dakota Attorney General's office, moved to dismiss the Petition arguing that habeas corpus relief was not available to seek relief from sanctions arising out of disciplinary or administrative actions and that Petitioner failed to state a constitutional claim upon which relief could be granted. The date of offense relied upon by Dahl was not challenged by Weber in the state habeas action.

On October 1, 2003, Dahl moved for summary judgment on the ex post facto claim in his state habeas action. Judge Steele issued a memorandum decision on December 15, 2003, determining that Dahl was entitled to summary judgment on the ex post facto claim based on both the State and Federal Constitutions. On December 15, 2003, Judge Steele entered findings of fact, conclusions of law, and an order granting Dahl's petition for release, and Dahl was released from DOC custody on that date.

## WHETHER DEFENDANTS ARE ENTITLED TO ABSOLUTE IMMUNITY ON DAHL'S 1983 CAUSE OF ACTION ?

Defendants maintain that they are entitled to absolute immunity in this action. Generally, persons who perform quasi-judicial functions are entitled to absolute immunity. *See Dunham v. Wadley*, 195 F.3d 1007, 1010 (8th Cir. 1999); *Anton v. Getty*, 78 F.3d 393, 395 (8th Cir. 1996). "For executive officials in general, however, [Supreme Court] cases make plain that qualified immunity represents the norm." *Cleavinger v. Saxner*, 474 U.S. 193, 201(1985)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 807(1982)). Although there are "exceptional situations where it is demonstrated that

---

[4]The amended petition also raised a compelled self-incrimination claim that was rendered moot when the circuit court granted habeas relief based on the Ex Post Facto claim.

absolute immunity is essential for the conduct of the public business," *see Butz v. Economou*, 438 U.S. 478, 507 (1978), the Defendants have not met their burden of showing that public policy requires the application of absolute immunity in the case at hand. A consideration of the factors to be considered in determining whether to apply absolute as opposed to qualified immunity[5] does not support applying absolute immunity in this case.

## WHETHER DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ON DAHL'S 1983 CAUSE OF ACTION ?

State actors are "protected by qualified immunity so long as 'their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). The Eighth Circuit has established the following three-part test to determine whether a plaintiff may overcome qualified immunity: "[T]he plaintiff must 'assert a violation of a constitutional or statutory right; that right must have been clearly established at the time of the violation; and, given the facts most favorable to the plaintiff, there must be no genuine issues of material fact as to whether a reasonable official would have known that the alleged action indeed violated that right.'" *Gregoire* at 417 (quoting *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998)).

A retroactive cancellation of good-time credits which increases a prisoner's punishment constitutes a violation of the ex post facto clause. The law in this matter was clearly established at least by the time the United States Supreme Court handed down its decision in *Lynce v. Mathis*, 519 U.S. 433 (1997). The Supreme Court held in *Lynce* that a Florida statue that retroactively cancelled provisional early release credits which had previously been awarded to a state prisoner for the purpose of alleviating prison overcrowding violated the ex post facto clause. At the time the South Dakota Supreme Court handed down its decision in *Meinders v. Weber*, 604 N.W.2d 248 (S.D. 2000), the penitentiary officials were apparently abiding by the decision in *Hughes v. Bloomberg*,

---

[5] Some of the factors to be considered in determining whether to apply absolute as opposed to qualified immunity are: (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the ability to correct error on appeal. *Butz v. Economou*, 438 U.S. 478 at 512.

CIV. 96-1898 (S.D. 7th Jud. Cir. June 27, 1997), holding that taking away good-time credit of a prisoner who had been convicted prior to the passage of the 1995 amendments was in violation of the ex post facto clauses of the State and Federal Constitutions. This Court must determine with regard to each defendant whether genuine issues of material fact exist as to whether a reasonable official in such defendant's position would have known that his actions or inaction violated the law as it existed at the time.

In 1996, when Defendant Dooley recommended to the Secretary of Corrections that Dahl's good-time credits be revoked, and when Defendant Bloomberg subsequently determined that Dahl's good-time credits should be revoked, there is no evidence that either Defendant Dooley or Defendant Bloomberg knew that DOC records were incorrect in showing Dahl's offense date as being after the effective date of the 1995 legislation authorizing the revocation of good time for failure to cooperate with treatment. In addition, neither the United States Supreme Court nor the South Dakota Supreme Court had decided the cases which subsequently affected the policies and practices at the South Dakota Penitentiary with regard to calculating the good-time credit of a prisoner who was incarcerated for conduct that occurred prior to the effective date of the 1995 legislative amendments to the good-time statutes. For these reasons the Court concludes that Defendant Dooley and Defendant Bloomberg are entitled to qualified immunity in this action.

Defendant Weber admitted service of the Dahl's pro se Petition on August 21, 2003. The pro se Petition clearly set forth Dahl's position as follows:

> The offense commission dates occurred before SDCL 24-2-18 was enacted and went into effect. Petitioner is an old law inmate who earns good time or good conduct credits, which has the effect of shortening his penitentiary sentence. SDCL 24-2-18, which was enacted after Petitioner's offenses were committed, now allows the Warden to recommend and the Department of Corrections to withhold, in full or in part, good conduct credit which has already been earned. The Department of Correction's retroactive application of SDCL 24-2-18, in this case, of withholding Petitioner's previously earned good time conduct, has unconstitutionally increased Petitioner's sentence.

Genuine issues of material fact exist as to whether a reasonable official in Weber's position would have known that the failure to restore Dahl's good-time credits and release Dahl from incarceration violated the law at the time Weber was served with Dahl's State Court Petition. At that time

*Lynce v. Mathis*, 519 U.S. 433 (1997), and *Hughes v. Bloomberg*, CIV. 96-1898 (S.D. 7th Jud. Cir. June 27, 1997), had been decided, and based on a penitentiary official's testimony, the South Dakota Supreme Court had stated that penitentiary officials were apparently abiding by the decision in *Hughes v. Bloomberg. See Meinders v. Weber*, 604 N.W.2d at 263. Also, at the time Defendant Weber was served with Dahl's State Court Petition, the 2002 DOC audit had been completed to ensure that sentence, parole eligibility, and release date calculations were correct for all inmates, and Dahl's inaccurate offense date information had been corrected. In spite of these circumstances, Dahl was not released from incarceration until he received State habeas relief on December 15, 2003.

Defendants may be correct in contending that Dahl, who had a 10th grade education, initially failed to clearly articulate his grounds for maintaining or restoring his good time credit. However, at the time Defendant Weber was served with the State habeas Petition, the blame could no longer be placed on Dahl for continuing Dahl's detention when the good-time credit of other similarly situated inmates had not been revoked or had been restored. *See Davis v. Hall*, 375 F.3d 703, 716 (8th Cir. 2004)(quoting *Whirl v. Kern*, 407 F.2d 781, 792 (5th Cir.1968) ("[U]nlike his prisoner, the jailer has the means, the freedom, and the duty to make necessary inquiries.")). For these reasons Defendant Weber is not entitled to qualified immunity.

### WHETHER DEFENDANT WEBER IS ENTITLED TO SUMMARY JUDGMENT ON THE MERITS OF THE 1983 CAUSE OF ACTION?

Prolonged detention beyond the term authorized by law unlawfully deprives a prisoner of rights protected under the due process clause of the Fourteenth Amendment. *Russell v. Hennepin County*, 420 F.3d 841, 846 (8th Cir. 2005); *Slone v. Herman*, 983 F.2d 107, 110 (8th Cir.1993). As there has been raised a genuine issue of material fact as to whether Defendant Weber acted with reckless disregard of Dahl's Constitutional rights in not taking action to secure Dahl's release after Weber was served with the State habeas Petition, Weber is not entitled to summary judgment on Dahl's § 1983 cause of action.

### WHETHER DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON DAHL'S STATE CLAIMS?

Defendants contend that Dahl's state claims are barred by statutory immunity. S.D.C.L. § 3-21-8 provides: "No person, political subdivision, or the state is liable for failure to provide a

prison, jail, or penal or correctional facility, or if such facility is provided, for failure to provide sufficient equipment, personnel, programs, facilities, or services in a prison or other correctional facility." In addition, S.D.C.L. § 3-21-9 provides:

> No person, political subdivision, or the state is liable for any injury resulting from the parole or release of a prisoner or from the terms and conditions of his parole or release or from the revocation of his parole or release, or for any injury caused by or resulting from:
>
> . . .
>
> (5) Services or programs administered by or on behalf of the prison, jail, or correctional facility.

A State Legislature has broad powers to control governmental tort liability and is limited only by the rule that it not act arbitrarily. *See Martinez v. California*, 444 U.S. 277 (1980)(upholding statute which conferred immunity on officials responsible for parole decisions). The immunity conferred by S.D.C.L. § 3-21-8 and S.D.C.L. § 3-21-9 has been recognized as valid by both the South Dakota Supreme Court and the Eighth Circuit Court of Appeals. *See Webb v. Lawrence County*, 144 F.3d 1131(8th Cir.1998); *Hancock v. Western South Dakota Juvenile Services Center*, 647 N.W.2d 722, 723 (S.D. 2002). Dahl, in resisting summary judgment, presented no argument why the immunity statutes did not apply to his state causes of action. The Court concludes that Defendants are entitled to summary judgment against Dahl on his state causes of action based on statutory immunity. Accordingly,

**IT IS ORDERED** that Defendant's motion for summary judgment is granted with respect to all Defendants and all causes of action except for the 42 U.S.C. § 1983 cause of action against Defendant Weber.

Dated this 5th day of August, 2008.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
By: _Colleen Schulte_, Deputy
(SEAL)